PRISCILLA WORSTED MILLS *vs.* MARY VIZZACCO.

MAY 20, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J.   This is a petition to review an agreement for compensation under the workmen's compensation act, general laws 1938, chapter 300, article III, §§1 and 13.   After a hearing in the superior court the petition was granted and a decree was entered ordering that payments of compensation cease forthwith upon its entry.   From that decree the respondent has duly prosecuted her claim of appeal to this court after the determination of certain procedural questions in connection with the taking of such appeal.   *Priscilla Worsted Mills* v. *Vizzacco,* 79 R. I. 217.

The decree appealed from contains the following findings of fact and order:

"(1)   The paraplegic condition with which respondent is now afflicted existed prior to the fall on March 7, 1946.

(2)   The fall was not a cause of that condition and has not aggravated that condition nor contributed to its progress.

(3) The respondent's present incapacity for work is due entirely to her paraplegic condition and is not causally connected with the fall.

(4) Respondent's incapacity for work due to the consequences of her fall has ended.

Whereupon on consideration of the facts found, it is Ordered, Adjudged and Decreed:

That all liability of the petitioning employer to the respondent employee under that preliminary agreement entered into between the parties shall wholly cease and determine from and after the date of entry hereof."

The agreement which is being reviewed is dated March 26, 1946 and was approved by the director of labor. It stated that the accident to respondent happened on March 7, 1946 while she was employed by petitioner as a doffer and that she fell while going down a ramp with a truck. The nature and location of her injury was described as "back injury."

It appears from the evidence that respondent, who was about twenty years old at the time of the accident and who had worked for petitioner for three years, left school when she was fifteen years of age and started to work when she was sixteen. The evidence also shows that as a child she had several sicknesses and that she began to walk with a limp at the age of sixteen. About the middle of the year 1944 she complained of a dull ache in her thighs and received several treatments from a chiropractor without being relieved. On December 1, 1944 she entered Saint Joseph's Hospital complaining of pain in her legs and remained two weeks during which time various tests were made after which she was discharged. The diagnosis was listed as spastic paralysis, old cerebral birth injury. She visited the outpatient clinic of the hospital during April and May 1945 receiving muscle re-education and pool treatment, but then she voluntarily stopped attending the clinic.

At the time of the accident respondent was pushing a flat dolly loaded with bobbins down a ramp and she slipped,

falling forward on her stomach. In her first description of the occurrence she testified: "I gently fell." Later in her testimony she denied making this statement and said that she fell hard. She got up or was assisted to her feet and pushed the dolly to an elevator. She complained of pain in her lower back and was sent to the plant physician who strapped her back for several weeks. She continued to complain of pain in that location and later went to Dr. Louis A. Sage and thereafter to Dr. Louis J. Cella, her personal physician, who gave her massage, electrical treatments, and prescribed exercises. She has done no work of any kind since the accident and complains that her ability to walk has been getting progressively worse and that her spine is painful especially in the lower back region. On May 31, 1946 an X-ray photograph of her back was taken by Dr. Boyd. The result was negative except for a showing that she had a congenital condition in that the·fifth lumbar vertebra was fused to the sacrum.

It was not disputed that at the time of the trial respondent was totally disabled from doing her former work as a doffer. The chief issue therefore is whether her present inability to work is causally connected in any way with the injury described in the agreement. The trial justice on conflicting evidence decided that there was no such causal connection. The immediate question for consideration is whether there was legal evidence before him to support such decision.

It is settled that in proceedings under the workmen's compensation act the findings of fact contained in the final decree of the superior court, if there is any legal evidence to support them, shall be conclusive in the absence of fraud, which is not suggested in this case. G. L. 1938, chap. 300, art. III, §6. *Sidney Blumenthal & Co.* v. *Jucknik,* 78 R. I. 246. The above statute has been applied and construed in many cases. This court has consistently held that the power to determine questions of fact in cases of

this kind rests solely in the superior court and that the supreme court does not pass upon the credibility of witnesses or weigh the evidence. Those matters are for the superior court only. *Antosia* v. *Crown Worsted Mills, Inc.*, 79 R. I. 205. The record therefore will be reviewed merely for the purpose of ascertaining whether there was any legal evidence to support the findings of the trial justice. *Central Engineering & Construction Co.* v. *Rassano*, 75 R. I. 108.

The petitioner summoned three witnesses who, after reviewing respondent's history and examining her, testified as to her condition and gave their respective opinions concerning the connection, if any, which her fall and alleged back injury had with her present condition. These witnesses were Dr. Ernest D. Thompson, an orthopedic specialist and surgeon, who examined respondent April 6, 1948, Dr. Hannibal Hamlin, a specialist in neurology and neurosurgery, who examined her July 20, 1949, and Dr. Charles S. Kubik, a neurological specialist, who examined her November 20, 1949. It is neither practical nor necessary to review in detail the testimony given by them. They were carefully and fully questioned both in direct and cross-examination. However, a few excerpts from their testimony may be referred to.

The following is from the testimony of Dr. Thompson: "Q. Now, Doctor, you were given by the patient a history of a fall on March 7, 1946, the patient telling you she was pushing some object, a truck, and slipped and fell on her abdomen; do you have an opinion based upon reasonable medical certainty whether that injury, which was described to you, was a factor in her condition at the time you saw her in April of 1948? A. Yes. Q. And will you state that opinion, please? A. My opinion was that the condition of this patient at the time of my examination was not associated in any way with the results of any injury."

In cross-examination he testified as follows in respect to the alleged pain in respondent's back: "Q. But you did

determine, although you do not know whether that pre-existing dormant condition might be stirred up again, you did conclude that the pain she suffered in the lower part of her back had no relationship whatsoever to her fall? A. That was my opinion, yes."

Doctor Hamlin testified in part as follows: "A. My opinion following my examination of this girl was that she was suffering from a progressive neurological disease, which existed prior to the fall of March 7, 1946. Q. Have you an opinion, Doctor, based upon the assumed facts which I have previously asked you to take into account, and also upon your examination of this respondent whether the fall on March 7, 1946, was a factor in this neurological disorder at the time that you saw her in August of 1949? A. I didn't think it was a factor."

From the testimony of Dr. Kubik, the following appears: "Q. And, not knowing what the cause of the spastic condition was, is there a possibility that a blow might weaken the muscles of the legs in this Mary Vizzacco who was suffering from a spastic, an unknown spastic condition? * * * A. Well, — Q. Just a possibility, that is all? A. Well, of course, she fell on her stomach, on her abdomen. Well, as I said before, I think the possibility cannot be ruled out, but I should think it would be unlikely."

Moreover Dr. Thompson was of the opinion that respondent's condition was due to the progress of disease independent of any trauma and he did not believe that her fall had aggravated her spastic paralysis. That witness and also Dr. Hamlin and Dr. Kubik further found no unusual rapidity in the progress of respondent's disease following her fall.

Doctor Roland Hammond and Dr. Louis J. Cella testified on behalf of respondent. The former, a specialist in orthopedic surgery, examined her December 15, 1949. Speaking generally, it apparently was his opinion that the fall which she sustained in 1946 aggravated her pre-existing spastic

condition. His chief reason for that view appears in the following answer to a question asked him by the court with reference to the existence of any remaining effect of her fall: "That is hard to determine, Your Honor, but the condition has progressed, as I said, unusually rapidly since the accident, and it is natural to believe, both as a physician and as a lay man that the accident had something to do with it. Beyond that, Your Honor, I am unable to help you."

Doctor Cella, respondent's personal physician and a general practitioner, in substance expressed the opinion that respondent's back injury though not severe caused an exaggeration of a previously paralytic condition due to the fact that the muscles of her lower extremities and hip had been weakened from the paraplegic attack which she had suffered, and that she had been slow in recovering from the moderate injury caused by the fall.

It is our opinion after examining the testimony and the exhibits that there was legal evidence, either direct or by way of reasonable inference, which supported the pertinent findings of fact made by the trial justice and set out in the decree entered in the superior court. According to law such findings are therefore conclusive. However, respondent contends that certain of such findings erroneously included matters other than the specific injury described as "back injury" in the agreement being reviewed and thus were not within the jurisdiction of the trial justice to pass upon under the instant petition. Upon consideration we are of the opinion that there is merit in such contention.

We referred to this subject in *Priscilla Worsted Mills* v. *Vizzacco, supra,* in the following language: "Aside from the propriety of the trial justice requiring such a showing as a matter of appellate procedure, it is obvious from his decision that there is a justiciable question at least with reference to findings 1 and 2 of the decree. If those findings were allowed to remain they would be res judicata, and if they were erroneously made by the trial justice it would there-

after be too late for respondent to correct them." Upon consideration it is our opinion that the above-quoted comment applies equally to the second line of the third finding of fact since it deals with the same subject matter contained in the first two findings. The remainder of the third finding, however, may stand as entered.

In support of her position, respondent has cited *Peters* v. *Monowatt Electric Corp.*, 78 R. I. 134. In our judgment the general principles of law applying to the description of a specific injury in a preliminary agreement and the effect of so doing as set out in the *Peters* case apply in general to the present petition. In opposing respondent's argument in this connection petitioner has brought to our attention the case of *Hanley* v. *Westminster Motors, Inc.*, 80 R. I. 22. It is our opinion, however, that the last-named case is distinguishable on its facts, since the petitioner here is apparently attempting to include directly under the allegations of the instant petition a progressive disease which is not within the description of the injury referred to in the preliminary agreement being reviewed.

Upon consideration, therefore, it is our conclusion that the decree appealed from should be modified by striking therefrom the first two findings of fact and also the portion of the third finding above referred to, namely, "due entirely to her paraplegic condition and is," which appears as the second line of said finding. In all other respects the decree is affirmed.

The respondent's appeal is sustained in part, otherwise it is denied. As above modified, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Boss & Conlan, John T. Keenan*, for petitioner.

*Luigi Capasso*, for respondent.